**NATIONAL CASKET CO., Inc., v. HEINER, Collector of Internal Revenue.**

No. 6876.

District Court, W. D. Pennsylvania.

June 29, 1933.

John E. Hughes, of Chicago, Ill., and Smith, Shaw, McClay & Seifert, of Pittsburgh, Pa., for plaintiff.

Louis E. Graham, U. S. Atty., and John A. McCann, Sp. Asst. U. S. Atty., both of Pittsburgh, Pa., for defendant.

McVICAR, District Judge.

This is an action in assumpsit to recover $84,573.39 with interest, being the amount of the tax which plaintiff alleges the defendant, the collector of internal revenue, collected from the plaintiff for its taxable year ending June 30, 1918, which the Commissioner of Internal Revenue refused to refund. Jury trial was waived. The court makes the following findings of fact and conclusion of law:

### Findings of Fact.

1. National Casket Company, Inc., the plaintiff, is, and at all times hereinafter mentioned was, a corporation duly organized and existing under the laws of the state of New York with an office and place of business at Pittsburgh, Pa.

2. D. B. Heiner, the defendant, is and from on or about the 1st day of August, 1921, has been the duly commissioned, qualified, and acting collector of internal revenue in and for the Twenty-Third District of Pennsylvania, and now resides in the borough of Kittanning and within the said Western District.

3. Pursuant to the requirements of the Revenue Act of 1918 (40 Stat. 1057), plaintiff duly filed its income and profits tax return for its taxable year ended June 30, 1918, with the then United States collector of internal revenue at Pittsburgh, Pa., on or about April 4, 1919, and paid to the then United States collector of internal revenue an income and profits tax of $372,652.01. None of said tax is sought to be recovered in this suit.

4. Thereafter, the Commissioner of Internal Revenue caused an examination to be made of plaintiff's said income tax return together with its books and records, and assessed against plaintiff an additional tax of $85,861.24, which said additional tax plaintiff paid to the defendant on July 16, 1926.

5. No part of the aforesaid tax, except the sum of $287.85, has been refunded or repaid to plaintiff to date.

6. On May 14, 1930, plaintiff filed with the defendant a claim for the refund of $85,861.24 and alleged as a ground of said claim that upon the organization of plaintiff there was paid into it for capital stock of $1,500,000 in the year 1890, good will which had a value of $1,500,000, and that none of this had been included in the invested capital of plaintiff, although it should be included therein. A true copy of the said claim for refund is attached to the statement of claim. The claim was confined to a valuation of good will.

7. On November 6, 1931, the Commissioner of Internal Revenue rejected said claim, and a true copy of the notice of rejection is annexed to the statement of claim. The rejection was based upon the decision of the

United States Board of Tax Appeals reported at 3 B. T. A. 954.

8. Prior to the enactment of the Revenue Act of 1926 (44 Stat. 9), the plaintiff appealed to the United States Board of Tax Appeals from the determination of the Commissioner of Internal Revenue that an additional tax of $85,861.24 was due from it for the fiscal year ended June 30, 1918. A hearing was held on said case before the United States Board of Tax Appeals on October 26, 1925, and on February 19, 1926, the United States Board of Tax Appeals rendered its decision which held that the good will of the plaintiff was valuable at the time it was paid into the plaintiff for its stock and also held that the evidence before the board was insufficient to enable the board to determine what such value was.

9. Plaintiff is a New York corporation, organized in the year 1890 with a capital stock of $3,000,000, divided into 30,000 shares of a par value of $100 each. The taxpayer was organized for the purpose of taking over the business of three corporations, to wit, the Stein Manufacturing Company, the Hamilton, Lemmon, Arnold Company, and the Chappel, Chase, Maxwell Company. Of the total capital stock, $1,500,000 was issued for tangible assets, consisting of the buildings, land, machinery, and equipment and cash of the three corporations. Each of the said corporations transferred tangible assets of the value of $500,000, for which each received $500,000 in stock. The value of the tangible assets was ascertained by a joint committee, which carefully appraised the property. In case the tangible assets lacked the value of $500,000, cash was contributed to make up the difference. The Stein Manufacturing Company contributed approximately $100,000 in cash to make up this difference in tangible assets. In addition to the $1,500,000 stock issued for tangible assets, $1,500,000 in stock was issued for the intangible assets consisting of good will, $500,000 being issued to each company. The three corporations at the time of the consolidation were the three leading manufacturers and sellers of caskets in the United States and were competitors in the same territory. The organization of the taxpayer was the culmination of numerous negotiations and conferences at arms length.

10. The Stein Manufacturing Company was located at Rochester, N. Y. Its specialty was the manufacture and sale of cloth-covered caskets. It had valuable patents on casket lids and metal linings for caskets. Its market embraced all the territory east of the Mississippi River. It had been a profitable going concern for over fifteen years. Its net earnings for the period immediately preceding 1890 were as follows:

| | |
|---|---|
| 1886 | $ 66,963.00 |
| 1887 | 78,187.91 |
| 1888 | 54,474.90 |
| 1889 | 46,539.03 |
| Total | $246,164.84 |
| Average | 61,541.21 |

The Hamilton, Lemmon, Arnold Company was located at Pittsburgh and its market also embraced all the territory east of the Mississippi river. This concern had also operated successfully for over fifteen years. Its product consisted principally of varnished caskets of the more expensive types. The earnings for the period immediately preceding 1890 were as follows:

| | |
|---|---|
| 1886 | $ 41,027.32 |
| 1887 | 68,883.83 |
| 1888 | 61,952.88 |
| 1889 | 76,521.37 |
| Total | $248,385.40 |
| Average | 62,096.35 |

The Chappel, Chase, Maxwell Company was located at Oneida, N. Y. It was larger and more aggressive than the other two. Its specialty was service to its customers. No books were available to show the earnings for the four years immediately preceding 1890. All three of these concerns had an established line of customers, consisting of undertakers and jobbers in all parts of the United States east of the Mississippi river. They also had branch houses and maintained a force of salesmen to market their products. They were recognized throughout the trade as the three leading casket manufacturers.

11. Conferences were held in the year 1890 at which the amount of the earnings of the companies, the assets of which were acquired by the petitioner, was stated. At one of these conferences records showing the earnings of the Chappel, Chase, Maxwell Company were produced and the earnings of this company were larger than those of the other two companies.

12. Plaintiff, after its organization, took over the factories, inventories, personnel, and all the business of the said corporations and continued successfully to operate the combined business. By means of the merger the plaintiff was able to effect many economies, such as the elimination of duplication of branch houses, sales force, and the manufacture of the same type of caskets in the various factories. Special lines were assigned to each factory. Plaintiff was financially suc-

cessful from the start and has continued so to the present time. The organizers of plaintiff, in fixing the capitalization at $3,000,000, anticipated and expected from the data at their disposal that substantial dividends could be paid on such capitalization. The plaintiff, ever since its organization, has always paid annual dividends. The net profits for the four years immediately following its organization in 1890 were as follows:

| | | | | | |
|---|---|---|---|---|---|
| Year ended June | 30, 1891 | | | $ | 191,034.05 |
| " " " | 30, 1892 | | | | 208,678.97 |
| " " " | 30, 1893 | | | | 222,965.47 |
| " " " | 30, 1894 | | | | 173,688.77 |
| " " " | 30, 1895 | | | | 204,495.33 |
| Total | | | | $ | 1,000,862.59 |
| Average | | | | | 200,172.52 |

13. Plaintiff claimed that the good will acquired by the issuance of $1,500,000 of stock in 1890 had a value of $1,500,000. The commissioner refused to allow any value for intangibles in computing invested capital.

14. Upon the organization of petitioner, a joint committee was appointed to appraise its assets. The good will acquired by the petitioner was appraised by this committee at $1,500,000. In issuing the capital stock of the petitioner, $1,500,000 of it was issued for this good will. The actual cash value of the good will acquired by the petitioner for this stock was $1,500,000.

15. On March 3, 1917, the total par value of plaintiff's outstanding capital stock was $4,034,300.

### Conclusion of Law.

Plaintiff is entitled to have its tax recomputed by including in its invested capital for the fiscal year ended June 30, 1918, the value of the good will acquired by it for its capital stock at a sum equal to 20 per cent. of $4,034,300 for the portion of said fiscal year falling in the calendar year 1917 and at a sum equal to 25 per cent. of said $4,034,300 for the portion of said fiscal year falling in the calendar year 1918.

### Opinion.

The plaintiff made a return of its income and profits tax for its taxable year ending June 30, 1918, and paid the tax shown to be due thereon. Subsequently the Commissioner of Internal Revenue assessed against plaintiff $85,861.24, which was caused by disallowing plaintiff $1,500,000 for invested capital, representing good will. Plaintiff paid this amount July 16, 1926, after a decision by the Board of Tax Appeals had been made, wherein it was held that the evidence was insufficient for the board to determine the value of the good will. After a demand for a refund from the Commissioner of Internal Revenue had been made and refused, plaintiff brought this action. Additional evidence was received including the opinions of three witnesses as to the value of the good will aforesaid.

Good will is an item which cannot be exactly appraised. An approximation is the best that can be done. There cannot be any question but that it has a value. A corporation which has, by diligent, faithful, and efficient efforts, over a long number of years, established a profitable business, has a value in assets much greater than the value of its tangible property.

The National Casket Company, plaintiff, was organized in 1890. It took over the three largest casket companies in the United States. Each of these constituent companies had a large well-established business which was rendering profitable returns to its stockholders. The tangible assets of these three companies were appraised by plaintiff at the time of acquisition, the tangible property being appraised at $1,500,000 and the good will of said companies at the same amount. Three witnesses, each having a long experience in the casket business and also familiar with the assets and business of each of the companies acquired by plaintiff, testified that the good will of said three companies, at the time of acquisition, had a value of $1,500,000. The evidence offered as to the value of the good will was offered wholly by the plaintiff. In the absence of contradictory evidence, I am of the opinion that it is sufficient to support the finding of fact wherein it was held that it had a value of $1,500,000.

Let an order directing the entry of judgment be prepared and submitted in accordance with the foregoing findings of fact, conclusion of law, and this opinion.